## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GEORGE KESTLER, JR.**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 15-1127**

**MOTIVA ENTERPRISES, LLC**                       **SECTION: "G"(5)**

## ORDER

In this litigation, Plaintiff George Kestler, Jr. ("Plaintiff") alleges that his employer, Defendant Motiva Enterprises LLC ("Motiva"), engaged in age discrimination under Louisiana law when it terminated him from his position after 23 years of service.[1] Pending before the Court is Motiva's "Motion for Summary Judgment."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion.

## I. Background

### A.   *Factual Background*

Kestler alleges that he began working for Shell Oil Company, co-owner of Motiva, on February 18, 1991.[3] He alleges that on February 25, 2014, after 23 consecutive years of service, he was terminated from his position at the age of 53.[4] Kestler alleges that the reason that was given for his termination was that he was "stealing time" or charging the company for hours he had not

---

[1] Rec. Doc. 1-1.

[2] Rec. Doc. 17.

[3] Rec. Doc. 1-1 at p. 4.

[4] *Id.*

worked.[5] According to Kestler, this reason is false and is a pretext for age discrimination.[6] Kestler alleges that he worked at least sixty hours a week to keep up with workloads and the needs of the refinery and no specific training was provided to him about how to charge his hours, take lunchtime, or keep daily records of his work tasks.[7] Kestler alleges that a few months after he was terminated, he was replaced by an employee twenty years younger than him.[8]

**B.    *Procedural Background***

Kestler filed this lawsuit against Motiva on February 24, 2015 in the 29th Judicial District Court for the Parish of St. Charles, Louisiana, alleging that Motiva has violated the Louisiana Employment Discrimination Law, Louisiana Revised Statute 23:312.[9] Motiva removed the case to this Court on April 9, 2015.[10]

Kestler filed a "Motion to Continue Trial Date" on January 12, 2016.[11] The Court denied the motion on January 21, 2016, finding that Kestler had failed to establish good cause for a continuance.[12] However, the Court ordered that if Kestler was able to show good cause as to why he failed to depose the two witnesses he mentioned in his motion, the Court would order that their

---

[5] *Id.*

[6] *Id.*

[7] *Id.* at p. 10.

[8] *Id.* at p. 11.

[9] Rec. Doc. 1-1.

[10] Rec. Doc. 1.

[11] Rec. Doc. 21.

[12] Rec. Doc. 31.

depositions be taken before trial.[13] Kestler did not submit any additional briefing regarding the two witnesses.

Motiva filed the instant motion on January 5, 2016.[14] Kestler filed an opposition on January 26, 2016.[15] With leave of Court, Motiva filed a reply on February 3, 2016.[16] On February 19, 2016, the Court noted that Kestler had asserted in his "Statement of Material Facts Which Present a Genuine Issue" that there is a genuine issue of material fact regarding: "[w]hether Motiva failed to follow its policy of progressive discipline when it terminated Kestler."[17] The Court observed that Kestler had made no argument regarding this issue and that Motiva had not addressed this issue in its reply memorandum.[18] Therefore, the Court ordered the parties to submit additional briefing, citing relevant authority, regarding whether Motiva's alleged failure to follow its policy of progressive discipline raises a genuine issue of material fact that the stated reason for Kestler's termination is merely a pretext for discrimination.[19] Kestler submitted a supplemental memorandum on February 22, 2016.[20] Motiva filed its response on February 23, 2016.[21]

---

[13] *Id.*

[14] Rec. Doc. 17.

[15] Rec. Doc. 32.

[16] Rec. Doc. 36.

[17] Rec. Doc. 41.

[18] *Id.*

[19] *Id.*

[20] Rec. Docs. 42, 43.

[21] Rec. Doc. 44.

Kestler then filed a "Motion for Leave of Court to File Amended Supplemental Memorandum in Opposition to Motion for Summary Judgment"[22] and "Motion for Expedited Hearing."[23] Motiva filed an opposition to the motion for leave to file on February 24, 2016.[24] The Court granted Kestler's motion for leave to file its amended supplemental memorandum, but noted the objections Motiva lodged against the Court's consideration of exhibits that Kestler had submitted, and stated that it would address these objections in the Court's consideration of the motion for summary judgment.[25] On March 1, 2016, with leave of Court, Motiva filed a second supplemental memorandum in support of its motion for summary judgment.[26]

## II. Parties' Arguments

### A.  *Motiva's Arguments in Support of Summary Judgment*

Motiva moves for summary judgment on Kestler's Louisiana age discrimination claim on the grounds that "[t]he undisputed evidence demonstrates that Kestler's employment was terminated for a legitimate, non-discriminatory reason: management's belief that Kestler committed payroll fraud by charging the company for hours that he did not work."[27] Motiva asserts that because Kestler cannot prove that Motiva's stated reason for termination was a pretext for age discrimination, the Court should grant the motion for summary judgment.[28]

---

[22] Rec. Doc. 45.

[23] Rec. Doc. 46.

[24] Rec. Doc. 47.

[25] Rec. Doc. 49.

[26] Rec. Doc. 54.

[27] Rec. Doc. 17-1 at p. 1.

[28] *Id.*

Motiva asserts that Kestler was an at-will employee and Louisiana courts have consistently held that employers have the right to dismiss at-will employees "at any time and for any reason without incurring liability."[29] Motiva contends that Kestler's age discrimination claim is governed by the Louisiana Employment Discrimination Law ("LEDL") which makes it unlawful for an employer to "[f]ail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment because of the individual's age."[30]

According to Motiva, Kestler's age discrimination claim under the LEDL should be analyzed under the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*.[31] In order to survive summary judgment, Motiva asserts that Kestler must offer evidence sufficient to allow a reasonable jury to conclude that he was discharged because of his age.[32] Motiva contends that, as the United States Supreme Court made clear in *Gross v. FBL Financial Services, Inc.*, Kestler must prove by a preponderance of the evidence that his age was the "but-for" cause of the termination.[33] Furthermore, Motiva asserts that the Louisiana Supreme Court has held a plaintiff must show that his age was a "determinative" factor in Motiva's decision.[34] Motiva argues that Kestler cannot establish the fourth element of a prima facie case of

---

[29] *Id.* at p. 7 (citing *Quebedeaux v. Dow Chem. Co.*, 2001-2297 (La. 6/21/02); 820 So. 2d 542, 545; *Read v. Willwoods Cmty.*, 2014-1475 (La. 3/14/15); 165 So. 3d 883, 887).

[30] *Id.* at p. 8 (citing La. Rev. Stat. 23:312(A)(1)).

[31] *Id.* (citing 411 U.S. 792 (1973)).

[32] *Id.* at p. 9 (citing *LaBove*, 802 So. 2d at 574).

[33] *Id.* (citing 557 U.S. 167 (2009)).

[34] *Id.* (citing *Montgomery v. C&C Self Enters.*, 10-705 (La. App. 3 Cir. 3/30/11); 62 So. 3d 279, 282).

discrimination because he was replaced by an individual in the protected age group and he has no evidence that similarly situated individuals outside the protected age group were treated differently.[35] Motiva asserts that even if Kestler could state a prima facie case, his claim fails as a matter of law because Motiva has articulated a legitimate, non-discriminatory reason for terminating Kestler's employment and there is no evidence to suggest that the stated reason was pretextual.[36]

Motiva asserts that it terminated Kestler because management believed that he falsified time records and committed payroll fraud.[37] Motiva contends that it is well established that falsifying time records constitutes a legitimate, non-discriminatory reason for discharging an employee.[38] According to Motiva, it is undisputed that Kestler reported 1,534 hours of overtime for 2013, and that Mike Partipilo ("Partipilo"), Shell's U.S. Compensation Manager, who oversees payroll for employees at the Norco, Louisiana Refinery where Kestler worked, contacted Lisa Nix ("Nix"), the Human Resources Account Manager for maintenance employees at the Norco Refinery, regarding Kestler's 2013 overtime.[39] Motiva asserts that there is no evidence that Partipilo had any idea of how old Kestler was when he asked Nix to look into Kestler's time records.[40] According to Motiva, Nix began an investigation into Kestler's time records that included talking to Kestler's supervisor, Perry Montz ("Montz"), about Kestler's overtime, reviewing Kestler's overtime reports, meeting with

---

[35] *Id.* at p. 10.

[36] *Id.*

[37] *Id.*

[38] *Id.* (citing *Huda v. Lockheed Martin*, No. 07-9090, 2008 WL 191300 (E.D. La. Jan. 22, 2008) (Barbier, J.); *Ebbs v. The Folger Coffee Co.*, No. 94-3117, 1997 WL 472515 (E.D. La. Aug. 18, 1997) (Lemelle, J.)).

[39] *Id.* at pp. 2–3.

[40] *Id.* at p. 3.

6

Kestler on three occasions to discuss his time records, comparing Kestler's time report to the Norco Refinery's gate logs, and following up with managers for whom Kestler claimed he was performing overtime work.[41]

Motiva asserts that when Nix specifically asked Kestler about eight hours of overtime he claimed on Christmas Day in 2013, Kestler admitted that although he was on call in the event of emergencies, he did not go to the Norco Refinery or receive any work-related calls on the duty phone.[42] Motiva also contends that Kestler reported three overtime hours on two days in January 2013 when he attended a training with other employees who reported only one hour of overtime and that, when questioned, Kestler gave conflicting stories about the amount of overtime he worked.[43] Motiva asserts that, in the investigation, Nix also found that Kestler routinely reported every minute of off-site lunches as work time and that, when Kestler was questioned, Nix believed that some of the time reported was not actually work time.[44] According to Motiva, Nix's investigation revealed that even if all of the time Kestler spent off the refinery property between the time he entered the refinery in the morning and last left the refinery in the evening was actual work time, he was charging the company an average of an extra three quarters of an hour per day.[45] Motiva contends that Nix reported her findings in a summary that she provided to Human Resources Manager Steve France, along with a recommendation that Kestler be terminated for falsifying his time records and

---

[41] *Id.* (citing Rec. Doc. 17-4 at pp. 3, 10–11; Rec. Doc. 17-2 at p. 10).

[42] *Id.* at p. 4 (citing Rec. Doc. 17-2 at pp. 6–8, 24–25).

[43] *Id.* (citing Rec. Doc. 17-5 at pp. 4–5; Rec. Doc. 17-4 at pp. 8–9).

[44] *Id.* at p. 5 (citing Rec. Doc. 17-5 at pp. 4–5; Rec. Doc. 17-4 at pp. 15–16).

[45] *Id.* (citing Rec. Doc. 17-4 at pp. 4–5).

committing payroll fraud.[46] Motiva asserts that the termination recommendation was vetted by Human Resources and Maintenance and Plant management in Norco, as well as corporate managers in Houston, and Kestler was terminated for falsifying his time records and committing payroll fraud on February 25, 2014.[47] According to Motiva, Kestler testified that the company told him that he was being terminated for stealing time and that no one from Motiva ever told him that the decision was based on his age.[48] Furthermore, Motiva asserts that Kestler testified that he had no reason to believe that Nix and Montz did not genuinely believe that he had stolen time.[49]

Motiva asserts that even if Kestler could prove that Nix and Montz's beliefs were mistaken, his claim would still fail because the LEDL does not "protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated."[50] In support, Motiva cites this Court's decision in *Dees v. United Rentals North America, Inc.*, where, Motiva asserts, this Court granted summary judgment, finding that the plaintiff had done nothing more than state in a conclusory manner that he was discriminated against and dispute the underlying facts regarding his termination in attempting to prove that his employer made the wrong decision in firing him.[51] Motiva contends that the sole dispositive issue in this case is whether Motiva was

---

[46] *Id.* (citing Rec. Doc. 17-4).

[47] *Id.* (citing Rec. Doc. 17-3 at pp. 5, 7, 13).

[48] *Id.* (citing Rec. Doc. 17-2 at pp. 13, 18).

[49] *Id.* at p. 6.

[50] *Id.* at p. 11 (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010)).

[51] *Id.* at p. 12 (citing No. 11-547, 2012 WL 1069183 (E.D. La. Mar. 29, 2012) (Brown, J.)).

acting on a good-faith belief that Kestler had falsified his time when it decided to terminate his employment.[52]

Motiva asserts that Kestler's subjective belief that he was discriminated against is not competent evidence of age discrimination.[53] Furthermore, Motiva contends that the Fifth Circuit has affirmed district courts' granting of summary judgment in cases where the evidence of discrimination is even stronger than it is here.[54] Motiva contends that in *Bodenheimer v. PPG Industries, Inc.*, the Fifth Circuit affirmed the decision of the district court granting summary judgment on an age discrimination claim where the plaintiff presented evidence that a regional manager had made a comment about the employee's retirement benefits, presented affidavits of two customers who stated that the quality of service in the office deteriorated after the employee's termination, and presented the plaintiff's own affidavits, in which he alleged that he was better qualified than the younger employee who replaced him.[55]

Similarly, in *Cervantez v. KMGP Services Co., Inc.*, Motiva asserts that the Fifth Circuit affirmed the district court's granting of summary judgment on an age discrimination claim on the grounds that the plaintiff had failed to prove that the employer's proffered reason for termination, a violation of the employer's computer usage policy, was pretext for age discrimination.[56] Motiva asserts that in *Cervantez*, the plaintiff had proffered evidence of inconsistencies in the employer's proof that he violated the computer usage policy and a comment made by a member of upper

---

[52] *Id.* at p. 13 (citing *Waggoner v. Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993)).

[53] *Id.* at p. 14 (citing *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir 1993)).

[54] *Id.* at p. 15.

[55] *Id.* at p. 14 (citing 5 F.3d 955, 957 (5th Cir. 1993)).

[56] *Id.* at p. 15 (citing 349 F. App'x 4 (5th Cir. 2009)).

9

management four years earlier that the company was expanding and going to start hiring young people.[57] Motiva contends that, unlike in *Bodenheimer* and *Cervantez*, here, Kestler has not adduced evidence of any age-related comments.[58] Rather, Motiva argues, Kestler's case consists solely of Kestler's opinion and pleas for sympathy because he was a long-term employee and a hard worker.[59] Motiva asserts that because Kestler has no evidence to prove that Motiva terminated him because of his age, rather than because it believed that he falsified his time records, Motiva is entitled to summary judgment dismissing this action with prejudice.[60]

**B.    *Kestler's Arguments in Opposition to the Motion for Summary Judgment***

In opposition, Kestler asserts that he was terminated after 23 consecutive years of service to Shell Oil and Motiva at the age of 53 and replaced by Victor L. Adams who is 39 years old.[61] Kestler asserts that he has presented sufficient evidence to demonstrate a prima facie case of unlawful discrimination by showing that: (1) he was discharged; (2) he was qualified for the position; (3) at age 53 he was within the protected class; and (4) he was replaced by someone outside of the protected class.[62] Furthermore, Kestler asserts that the only other employee who was fired for payroll fraud was David Landeche, who was fired when he was 54 years old.[63] Kestler also contends

---

[57] *Id.* (citing 349 F. App'x at 4).

[58] *Id.*

[59] *Id.*

[60] *Id.* at p. 16.

[61] Rec. Doc. 32 at p. 1.

[62] *Id.* at p. 11.

[63] *Id.* (citing Rec. Docs. 32-11, 32-12 at p. 1).

that Motiva hired all young heavy equipment operators and that the mechanical inspector jobs went to younger people as well.[64]

Kestler also contends that he has come forth with sufficient evidence that Motiva's alleged non-discriminatory reason for termination is a pretext for age discrimination.[65] Kestler asserts that he has always worked a lot of overtime and when his previous supervisors were questioned about his overtime, the supervisors told Human Resources that Kestler was needed and that the facility could not function without him.[66] Kestler asserts that because his skill sets were broad and covered many disciplines throughout the refinery, it makes sense that he had more overtime because he could fill in for several positions.[67] Kestler contends that employees often called him for assistance after he had left the facility.[68] He also asserts that the Court can assume that because Partipilo is a Human Resources employee, he would have access to Kestler's demographic information and "it would be foolish to think that Mr. Partiplo [sic] was not aware that Kestler was eligible for full pension retirement in less than 2 years."[69] In fact, Kestler states in his declaration that Partipilo informed him that he was eligible for full retirement pension in less than two years.[70] Kestler also asserts that Motiva "attempted to terminate [him] for several issues before subsequently and ultimately agreeing

---

[64] Id.

[65] Id. at p. 12.

[66] Id.

[67] Id.

[68] Id.

[69] Id. at p. 13.

[70] Rec. Doc. 32-2 at p. 6.

on the pay discrepancy."[71] Kestler asserts that the alleged nondiscriminatory reason for Kestler's termination is a pretext for age discrimination because the payroll system at Motiva is not solely based on the number of hours employees spend on site and his self-reported work hours were accurate.[72] Kestler contends that Montz has testified that he did not approve Kestler's overtime despite the fact that under the company policy a leader or supervisor must approve overtime.[73] Therefore, Kestler asserts that Montz is at fault, not Kestler.[74]

Kestler asserts that the United States Supreme Court case cited by Motiva for the proposition that a plaintiff bringing a disparate treatment claim must prove by a preponderance of evidence that age was a "but-for" cause of the termination, *Gross v. FBL Financial Services, Inc.*, is distinguishable because that case was under the Age Discrimination in Employment Act ("ADEA"), not Louisiana law, and there, the case was not at the summary judgment stage but was being reviewed after a jury trial.[75] Kestler asserts that several circuits have held that the requirement that the plaintiff show that age was the "but-for" cause of termination is only applicable at the trial stage whereas the *McDonnell Douglas* burden-shifting framework applies at the summary judgment stage.[76] Kestler contends that, in order to defeat a motion for summary judgment, the Court must

---

[71] *Id.* at p. 7.

[72] Rec. Doc. 32 at p. 13.

[73] *Id.* at pp. 13–14.

[74] *Id.* at p. 14.

[75] *Id.* at p. 9 (citing 557 U.S. 167 (2009)).

[76] *Id.* (citing *Shelley v. Green*, 666 F.3d 599, 607–08 (9th Cir. 2012); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009); *Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 446–47 (1st Cir. 2009); *Connolly v. Pepsi Bottling Grp., LLC*, 347 F. App'x 757, 759–61 (3d Cir. 2009)).

decide whether Kestler has produced facts which, if believed, would lead a reasonable jury to conclude that it was more likely than not that Motiva terminated Kestler because of his age.[77]

## C.    *Motiva's Arguments in Further Support of Summary Judgment*

Motiva asserts that Kestler has failed to create a genuine issue of material fact to defeat summary judgment.[78] First, Motiva argues that Kestler's objections in his statement of material facts violate the Local Rules and the Court's Scheduling Order which requires Kestler to provide "specific references to the record evidence" that contradict Motiva's statements of undisputed fact.[79] Motiva asserts that because Kestler has failed to do so, all of the facts listed in Motiva's Statement of Undisputed Facts should be deemed admitted.[80]

Next, Motiva asserts that Kestler's declaration is not proper summary judgment evidence because it is "riddled with statements that are speculative, hearsay, subjective opinion, or otherwise not based on personal knowledge."[81] Motiva contends that Federal Rule of Civil Procedure 56(c)(4) provides that a declaration used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence and show that the declarant is competent to testify on the matters stated.[82] However, according to Motiva, Kestler's declaration purports to offer testimony about what other witnesses know or understand.[83] Motiva

---

[77] *Id.* at p. 10 (citing *Rhodes v. Guiberson Oil Tools*, 74 F.3d 989, 994 (5th Cir. 1996) (en banc)).

[78] Rec. Doc. 36 at p. 1.

[79] *Id.* at p. 3.

[80] *Id.* at p. 4.

[81] *Id.*

[82] *Id.*

[83] *Id.*

asserts that Kestler's declaration does not set forth any facts establishing that he has personal knowledge about the subjective mindset of those individuals and therefore the declaration should be entitled to no weight and should be disregarded by the Court.[84] Furthermore, Motiva argues that Kestler's declaration contains inadmissible hearsay which is not proper summary judgment evidence.[85] Motiva asserts that because Kestler has not made any attempt to show an applicable exception to the hearsay rule, the testimony regarding what past supervisors and other employees stated should be disregarded.[86]

In addition, Motiva contends that Kestler's declaration also contains statements that are "either misleading, inconsistent with his own deposition testimony, or both."[87] Motiva asserts that the Supreme Court has recognized that district courts may refuse to consider declaration testimony that is blatantly inconsistent with the summary judgment record and, based upon the numerous inconsistencies between Kestler's declaration and the record, the Court should do so here.[88]

Motiva also argues that Kestler's claim cannot survive a motion for summary judgment based upon his "bogus allegations" regarding U.S. Compensation Manager Mike Partipilo.[89] Motiva also contends that Kestler's allegations about Partipilo are irrelevant because an allegedly age-related comment is evidence of discriminatory intent only if it is attributable to a decision-maker and the undisputed record proves that Partipilo was not involved in the decision to terminate Kestler's

---

[84] *Id.* at p. 5 (citing *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987)).

[85] *Id.* (citing *Cormier v. Pennzoil Explor. & Prod. Co.*, 969 F.2d 1559, 1561 (5 Cir. 1992)).

[86] *Id.* at p. 6.

[87] *Id.*

[88] *Id.* at pp. 7–8 (citing *Scott v. Harris*, 550 U.S. 372, 379 (2007)).

[89] *Id.* at p. 8.

14

employment.[90] In addition, Motiva asserts that Kestler's conclusory allegations about Partipilo "inquiring" about him in the past and contacting him about his retirement benefits do not comply with Federal Rule of Civil Procedure 56 which requires that affidavits opposing summary judgment be specific.[91] Motiva also contends that even assuming Partipilo did notify Kestler regarding his retirement eligibility, this does not constitute evidence of age discrimination under Fifth Circuit precedent finding that evidence regarding "high salary" and "fast-approaching eligibility for retirement benefits" is insufficient to establish a claim of age discrimination because the ADEA prohibits discrimination on the basis of age, not salary or seniority.[92]

Motiva also argues that the organizational chart attached to Kestler's declaration is insufficient to defeat Motiva's motion for summary judgment.[93] Motiva contends that the document is hearsay and Kestler should not be permitted to rely on it because he never produced it in discovery and did not include it on his exhibit list.[94] Motiva asserts that the Court should strike this exhibit from the record and disregard any arguments related to the chart for purposes of its summary judgment ruling as a result.[95] Motiva also contends that the chart should be disregarded because it is fundamentally inconsistent with Kestler's prior deposition testimony in which he stated that he

---

[90] *Id.* (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41–42 (5th Cir. 1996)).

[91] *Id.* at p. 9 (citing *Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994)).

[92] *Id.* (citing *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995)).

[93] *Id.* at p. 10.

[94] *Id.*

[95] *Id.* (citing *Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 370 (5th Cir. 2014)).

did not have any idea of instances where other people were discriminated against on the basis of age.[96]

Finally, Motiva contends that even assuming that the Court were to consider Kestler's chart, it would not allow him to survive summary judgment because it is irrelevant.[97] According to Motiva, evidence concerning the experiences of other employees is relevant only if the other individuals are similarly situated to the plaintiff in that they have held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.[98] Motiva asserts that the misconduct by the plaintiff that resulted in the adverse employment action must have been identical to that of the other employees as well.[99] Motiva contends that Kestler has not cited a shred of evidence to prove that the individuals listed on the chart are similarly situated.[100] Motiva also points to Kestler's deposition testimony where he was asked if he knew of any person in his position that the company had determined was stealing time, to which he responded "No."[101]

---

[96] *Id.* at p. 11 (citing *S.W.S. Erectors Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)).

[97] *Id.* at p. 12.

[98] *Id.* (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000); *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)).

[99] *Id.* at pp. 12–13 (citing *Turner*, 675 F.3d at 893).

[100] *Id.* at p. 13.

[101] *Id.* (citing Rec. Doc. 36 at p. 36).

### D.      Kestler's Supplemental Memorandum in Opposition to Summary Judgment

On February 19, 2016, the Court noted that Kestler had asserted in his "Statement of Material Facts Which Present a Genuine Issue" that there is a genuine issue of material fact regarding: "[w]hether Motiva failed to follow its policy of progressive discipline when it terminated Kestler."[102] The Court observed that Kestler had made no argument regarding this issue and that Motiva had not addressed this issue in its reply memorandum.[103] Therefore, the Court ordered the parties to submit additional briefing, citing relevant authority, regarding whether Motiva's alleged failure to follow its policy of progressive discipline raises a genuine issue of material fact that the stated reason for Kestler's termination is merely a pretext for discrimination.[104]

In his supplemental memorandum, Kestler asserts that at all times relevant to this lawsuit, Motiva had a progressive discipline policy.[105] Kestler points to the deposition testimony of Montz who describes the progressive discipline policy as follows: "So there's coaching and counseling and then there's formal discipline, which is an oral reminder, a written reminder, a DML – which is a decision-making leave – and termination."[106] Montz also testified that he had used the progressive discipline in the past.[107] Kestler also asserts that he had an expectation of a progressive discipline policy because it was invoked on a disciplinary action taken against him in 2011.[108] Kestler cites to

---

[102] Rec. Doc. 41.

[103] *Id.*

[104] *Id.*

[105] Rec. Doc. 42 at p. 1.

[106] *Id.* at pp. 1–2 (citing Rec. Doc. 32-6 at p. 4).

[107] Rec. Doc. 32-6 at p. 4.

[108] Rec. Doc. 42 at p. 2.

an email from Matthew Kline, Human Resource Account Manager, that recommends that management move to the first step in the progressive discipline process for an infraction that involved Kestler in 2011.[109] Kestler also points to an oral reminder that he received.[110] Kestler asserts that he was fired after 23 years without warning and without the company using its progressive discipline policy.[111]

Kestler asserts that the Fifth Circuit has recognized that failure to follow a progressive disciplinary system may give rise to inferences of pretext.[112] Kestler cites three Fifth Circuit cases in support.[113] Kestler asserts that in *Goudeau v. Nat'l Oilwell Varco, L.P.*, the Fifth Circuit stated what "when an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext."[114] Kestler contends that in *Machinchick v. PB Power, Inc.*, the Fifth Circuit stated that even the non-mandatory nature of a progressive discipline plan "did not eliminate the inference of pretext raised by [the] failure to follow an internal company policy specifically stating that it should be 'followed in most circumstances.'"[115] Finally, Kestler cites *Keller v. Coastal Bend College*, in which the Court stated "although this court has held that an employer's failure to follow its own progressive discipline policy can be evidence of pretext, Keller

---

[109] Rec. Doc. 43 at p. 1.

[110] *Id.*

[111] *Id.*

[112] Rec. Doc. 42 at p. 2.

[113] *Id.* at p. 3.

[114] *Id.* (quoting 793 F.3d 470 (5th Cir. 2015)).

[115] *Id.* (quoting 398 F.3d 345 (5th Cir. 2005)).

18

has failed to put forth any evidence establishing that the College used such a policy."[116] Kestler asserts that, contrary to the facts in *Keller*, here, evidence has been submitted that Motiva used its progressive discipline policy.[117]

Kestler also asserts that he has submitted other evidence of pretext, including evidence that he did not falsify his time records and was never given training on how to calculate his time.[118] Kestler also asserts that he pled for the company to use its progressive discipline system rather than terminating him.[119]

### E.   *Motiva's Supplemental Memorandum in Support of Summary Judgment*

Motiva contends that Kestler's allegation that Motiva failed to follow its progressive discipline policy is insufficient to create a material issue of fact for two reasons: (1) Motiva did not deviate from its policies when it terminated Kestler's employment and (2) there is no evidence that Motiva applied its progressive discipline policy differently to younger employees who falsified their time entries.[120] First, Motiva asserts that the Motiva Code of Conduct requires all employees to provide complete and accurate information in any business record they prepare, including their employee time records.[121] Motiva contends that the Code of Conduct further states that any person who violates the company's ethical standards, policies, or the law is subject to disciplinary action

---

[116] *Id.* (quoting No. 15-40710, 2015 WL 6445751 (5th Cir. 2015)).

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] Rec. Doc. 44.

[121] *Id.* at p. 1 (citing Rec. Doc. 32-10 at p. 21).

up to and including termination.[122] Citing the deposition testimony of Nix, Motiva contends that although it does maintain a progressive discipline policy, it is used primarily for disciplinary actions against hourly employees, opposed to staff employees like Kestler.[123] Motiva also asserts that when an employee has committed an act of theft or other egregious violation of company policy, the company's normal policy is to bypass the steps of formal discipline and proceed immediately to termination.[124] In support, Motiva cites Montz's deposition testimony where he stated that conduct like stealing would result in automatic termination.[125]

Motiva also submits the deposition testimony of Kestler, who testified that David Landeche was also terminated for charging time that he wasn't working.[126] Citing the investigation summary regarding David Landeche, Motiva contends that Landeche was also terminated without any progressive discipline.[127]

Motiva asserts that the decision to terminate Kestler's employment was completely consistent with its own policies and the language of the Code of Conduct.[128] Motiva submits the testimony of Nix, Human Resources Account Manager for the maintenance employees at the Norco Refinery, who testified that the company always reserves the right to skip steps in its progressive discipline policy and the decision was made in Kestler's case that his conduct was egregious enough

---

[122] *Id.* at p. 2 (citing Rec. Doc. 32-10 at p. 9).

[123] *Id.* (citing Rec. Doc. 44-1 at p. 6).

[124] *Id.*

[125] *Id.* (citing Rec. Doc. 44-2 at p. 7).

[126] *Id.* at pp. 2–3 (citing Rec. Doc. 44-3 at p. 6).

[127] *Id.* at p. 3 (citing Rec. Doc. 44-4 at p. 2).

[128] *Id.*

to warrant termination.[129] In support of its assertion that this evidence demonstrates that Kestler cannot prove that the reason given for his termination was pretextual, Motiva cites a Fifth Circuit case, *Taylor v. Peerless Industries*, where the court held that an employer's failure to follow its progressive discipline policy was insufficient to establish pretext because the policy was non-mandatory and the employee had no evidence that the employer had applied the policy differently in other cases.[130] Motiva also cites a Northern District of Texas case, *Dennison v. AT&T Corp.*, in which it asserts the court found that the code of conduct clearly stated that policy violations could result in dismissal and stated that it would not second-guess AT&T's business decision to discharge the plaintiff for her infractions.[131]

Second, Motiva asserts that even assuming Kestler could show that Motiva failed to follow its progressive discipline policy, this is insufficient to show pretext because there is no evidence that Motiva applied its progressive discipline policy differently to younger employees who falsified their time records.[132] Motiva contends that, in the Fifth Circuit, an employer's failure to follow a progressive discipline policy is only probative of discriminatory intent when the plaintiff has proof that the policy was applied differently to others outside the protected class.[133] In support, Motiva cites *Hamilton v. AVPM Corp.*, a Fifth Circuit case where the court stated, "Although an employer's failure to follow its own policies may be probative of discriminatory intent, we require discharged employees in discrimination cases to show, in addition, that they were treated differently from non-

---

[129] *Id.* (citing Rec. Doc. 44-1 at p. 8).

[130] *Id.* (citing 322 F. App'x 355, 367 (5th Cir. 2009)).

[131] *Id.* (citing No. CA 3:97-CV-1565-R, 1998 WL 873032, at *16–18 (N.D. Tex. Dec. 3, 1998)).

[132] *Id.* at p. 4.

[133] *Id.*

minority employees."[134] Motiva also cites another Fifth Circuit case, *Okpala v. City of Houston*, in which the court stated "Even had Okpala shown that the City failed to follow its own procedures in the layoff, he must also show that the procedure was adhered to differently in cases involving employees who were not members of his protected group."[135] Finally, Motiva cites a Western District of Louisiana case, *Hedgemon v. Madison Parish School Board*, where the court found that "Even if plaintiff were to show that the MPSB failed to follow its RIF Policy, this is not enough to establish discriminatory intent in the case of a discharged employee. Rather, she must also show that she was treated differently from other employees outside of her protected class (or those who were significantly younger than her)."[136] Motiva asserts that evidence that Motiva applied its progressive discipline policy differently to younger employees is required because "[t]he ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated."[137] Motiva contends that there is no evidence that Motiva treated younger employees who falsified their time records any differently than it treated Kestler.[138]

**F.    *Kestler's Amended Supplemental Memorandum In Opposition to Summary Judgment***

In his amended supplemental memorandum, Kestler asserts that Wayne Fernandez ("Fernandez"), the Central Shop Mechanical Team Leader, also testified that Motiva has a progressive discipline policy.[139] Kestler asserts that Fernandez would warn his subordinates that they

---

[134] *Id.* (quoting 476 F.3d 337, 346 (5th Cir. 2007)).

[135] *Id.* (citing 397 F. App'x 50, 53 (5th Cir. 2010)).

[136] *Id.* (citing No. 14-0817, 2015 WL 4094701 (W.D. La. July 7, 2015)).

[137] *Id.* at p. 5 (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010)).

[138] *Id.*

[139] Rec. Doc. 50 at p. 4.

22

were "stepping on the line" before taking any type of disciplinary action and Fernandez testified that he would expect to receive a warning from a manager if he had done something wrong.[140]

Kestler also contends that Motiva is estopped from claiming that Kestler has no evidence of younger employees who the company claims falsified time records and were given warnings instead of termination because, when Kestler requested this evidence in an interrogatory, Motiva responded that the information sought was confidential, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.[141] Kestler asserts that he filed a motion to compel, but that motion was denied by the magistrate judge.[142] Kestler contends, however, that in response to the interrogatory, Motiva stated that the only employee at the Norco Refinery who was counseled or reprimanded for committing payroll fraud is David Landeche, who was 53 years old.[143]

Kestler also submits a document that he asserts is a worksheet that is part of the internal investigation by Motiva that calculates the amount of overtime that Kestler submitted in January 2013.[144] Kestler asserts that on top of this worksheet the words "George Kestler - retirement-eligible*" are written.[145] Kestler asserts that this is evidence of pretext because the fact that he is retirement eligible relates to his age and the fact that he is retirement eligible should be irrelevant to the calculation of Kestler's overtime.[146]

---

[140] *Id.* (citing Rec. Doc. 32-5 at p. 8).

[141] *Id.* at p. 5 (citing Rec. Doc. 32-11 at pp. 9–10).

[142] *Id.*

[143] *Id.* (citing Rec. Doc. 32-11 at pp. 9–10).

[144] *Id.* at p. 4 (citing Rec. Doc. 44 at p. 3).

[145] *Id.* (citing Rec. Doc. 44 at p. 3).

[146] *Id.*

### G.     *Motiva's Second Supplemental Memorandum in Support of Summary Judgment*

Motiva contends that in order to survive a motion for summary judgment, Kestler has the burden of offering evidence sufficient to allow a reasonable jury to make the following findings: "(1) that Motiva's stated reason for terminating his employment was not the actual reason; and (2) that the true reason for its decision was because of his age."[147] In addition, Motiva asserts that the causation standard Kestler must satisfy is "more demanding" than the standard that applies in other kinds of employment discrimination cases because Kestler must prove that age was the "but for" cause of the decision to terminate rather than simply a "motivating factor."[148] According to Motiva, in order to survive a motion for summary judgment, Kestler must demonstrate that his age actually played a role in Motiva's decision-making process and that it had a "determinative influence on the outcome."[149]

Motiva asserts that Kestler's arguments regarding its progressive discipline policy do not create a genuine issue of material fact regarding whether Motiva's stated reasons are a pretext for age discrimination for two reasons: (1) a failure to follow a progressive discipline policy is not probative of pretext if the employer had discretion to deviate from the policy; and (2) a failure to follow an internal policy is not probative of pretext without evidence that other employees were treated differently.[150] In support of its contention that Kestler cannot show pretext in this case based upon a failure to follow a progressive discipline policy, Motiva cites a Western District of Texas

---

[147] Rec. Doc. 54 at p. 1 (citing *Kass v. Albemarle Corp.*, 220 F.3d 584 (5th Cir. 2000); *Montgomery v. C&C Self Enters.*, 10-705 (La. App. 3 Cir. 3/30/11); 62 So. 3d 279, 287)).

[148] *Id.* at p. 2 (citing *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013); *Montgomery*, 62 So. 3d at 287).

[149] *Id.* (quoting *Montgomery*, 62 So. 3d at 282).

[150] *Id.* at pp. 2–4.

case, *Saldivar v. Austin Independent School District*, where the court stated that "if the employer has discretion to deviate from the [progressive discipline] policy, then a failure to follow the policy does not show pretext."[151] Motiva also cites *Taylor v. Peerless Industries, Inc.*, a Fifth Circuit case in which Motiva contends that the court found that the plaintiff had failed to demonstrate pretext because the plaintiff failed to offer evidence showing that the employer "generally followed the four steps outlined in its disciplinary policy, or that the policy was applied differently to similarly situated employees."[152] Motiva asserts that the evidence in this case shows that Motiva does not follow progressive discipline steps when an employee is believed to have committed an egregious violation of the company's core policies involving honesty and integrity as Kestler did.[153]

Motiva also asserts that a failure to follow an internal policy is not probative of pretext without evidence that other employees were treated differently.[154] Motiva contends that courts have recognized that an employee's termination "may well be unfair or even unlawful yet not be evidence of age bias under the ADEA."[155] In support, Motiva cites a Fifth Circuit case *Turner v. Baylor Richardson Medical Center*[156] and a Northern District of Texas case *Hall v. Smurfit-Stone Container Enterprises.*[157] Motiva also cites *Moore v. Eli Lilly & Co.*, a Fifth Circuit case in which the court

---

[151] *Id.* at p. 3 (citing No. A-14-CA-00117-SS, 2015 WL 5655699, at *7 (W.D. Tex. Sept. 24, 2015)).

[152] *Id.* (citing 22 F. App'x 355, 367 (5th Cir. 2009)).

[153] *Id.*

[154] *Id.* at p. 4 (citing *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996); *Grubb v. Sw. Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6 Cir. 2005); *Vaughan v. MetraHealth Cos.*, 145 F.3d 197, 203 (4th Cir. 1998)).

[155] *Id.* (citing *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993)).

[156] *Id.* at pp. 4–5 (citing 476 F.3d 337, 346 (5th Cir. 2007)).

[157] *Id.* at p. 5 (citing No. 3:07-CV-0501-G, 2008 WL 3823252 (N.D. Tex. Aug. 14, 2008)).

stated that the ADEA was not intended to provide a legal remedy "simply because the terminated worker is over the age of forty" and unless there is evidence showing "nexus between the employment actions taken by the employer and the employer's age," a plaintiff cannot provide pretext based upon the employer's failure to comply with internal disciplinary policies.[158] Motiva asserts that Kestler has put forward no evidence that a younger employee who falsified time records was given the benefit of a disciplinary warning while older employees were fired, or any other type of evidence establishing the necessary "nexus" between Motiva's decision and his age.[159] Motiva also cites *Wyvill v. United Companies Life Insurance Co.*, where, Motiva asserts, the court held that the plaintiffs had failed to prove pretext as a matter of law because they offered no proof of a connection between the employer's failure to follow its disciplinary policy and the plaintiffs' ages, such as proof that the employer "complied with standard disciplinary procedures when filing reports on younger workers but flouted them when it came to [the plaintiffs]."[160]

Motiva asserts that the only other employee who falsified his time, David Landeche, received the exact same discipline as Kestler, which was termination without the use of the progressive discipline policy.[161] Motiva contends that, by asking the Court to reverse his termination, Kestler is effectively asking to be treated more favorably than Landeche, which is beyond what the law requires.[162]

---

[158] *Id.* (citing 990 F.2d 812, 819 (5th Cir. 1993)).

[159] *Id.*

[160] *Id.* at pp. 5–6 (citing 212 F.3d 296, 305–06 (5th Cir. 2000)).

[161] *Id.* at p. 6.

[162] *Id.* (citing *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981) ("The ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group.").

Motiva also asserts that the cases that Kestler has cited are easily distinguishable from the facts in this case.[163] Motiva contends that in *Goudeau v. National Oilwell Varco*, the Fifth Circuit found that plaintiff had offered evidence not only that the employer had failed to follow its progressive discipline policy, but had actually manufactured steps in the policy by issuing written warnings to paper his file after it decided to fire the plaintiff.[164] Furthermore, Motiva asserts that the court in *Goudeau* found that the plaintiff had introduced evidence that the plaintiff's supervisor had made numerous ageist remarks and told the plaintiff that he planned to fire two of the plaintiff's older coworkers, one of whom was, in fact, terminated.[165] Motiva contends that here, Kestler has presented no evidence of ageist remarks.[166]

Motiva contends that in *Keller v. Coastal Bend College*, the Fifth Circuit focused upon the plaintiff's failure to offer evidence regarding the company's use of its policy.[167] Motiva asserts that in this case, Kestler asked Motiva witnesses about the progressive discipline policy and they testified that it is not used for egregious violations of the company's Code of Conduct like Kestler's.[168] Motiva also asserts that *Machinchick v. PB Power, Inc.* is distinguishable because the employer's policy in that case contained specific language providing that it should be "followed in most circumstances."[169] In addition, Motiva asserts that the case pre-dates the Supreme Court's holding

---

[163] *Id.*

[164] *Id.* at pp. 6–7 (citing 793 F.3d 470, 477 (5th Cir. 2015)).

[165] *Id.* at p. 7 (citing *Goudeaux*, 793 F.3d at 475–77).

[166] *Id.*

[167] *Id.* (citing No. 15-40710, 2015 WL 6445751 (5th Cir. 2015)).

[168] *Id.*

[169] *Id.* (citing 398 F.3d 345, 355 & n.29 (5th Cir. 2005)).

in *Gross v. FBL Financial Services, Inc.* and therefore the plaintiff in *Machinchick* was only required to show that age was a "motivating factor" in the adverse employment decision, whereas now Kestler is required to prove that age was the "but for" cause of his termination.[170]

Motiva also asserts that the question of whether Kestler's conduct constituted payroll fraud, theft, or something else, is immaterial.[171] Motiva contends that committing payroll fraud by falsifying time records is a form of theft because a company is paying the employee for work that he did not actually perform.[172] According to Motiva, a good faith belief that the employee's conduct violated a company policy is enough to constitute a legitimate, non-discriminatory reason for the adverse employment action.[173]

In response to Kestler's attachment of the worksheet with the handwritten note, Motiva asserts that Kestler did not list this document on his exhibit list or on the list of his exhibits in the Pre-Trial Order, therefore, this document is not properly before the Court.[174] In addition, Motiva asserts that Kestler has not tried to identify the author of the notation "George Kestler—retirement eligible*," nor did he ask any witness about it, therefore, the notation, as presented, is not competent evidence that can defeat summary judgment.[175] Furthermore, Motiva contends that it is well

---

[170] *Id.* at p. 8 (citing 557 U.S. 167, 177 (2009)).

[171] *Id.*

[172] *Id.* (citing *Eldridge-Hall v. City of Houston*, No. H-04-913, 2005 WL 1155102, at *5 (S.D. Tex. May 16, 2005)).

[173] *Id.* at p. 9 (citing *Watts v. L-3 Comm'ns Corp.*, No. 3:12-CV-4248-G, 2013 WL 3789868, at *6 (N.D. Tex. July 22, 2013)).

[174] *Id.*

[175] *Id.*

established that "mere references to retirement are not evidence of age discrimination."[176] Motiva contends that no reasonable jury could conclude based on this handwritten notation that age was the "but for" cause of Kestler's termination.[177]

## III. Law and Analysis

### A.    Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[178] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[179] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[180] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[181] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[182]

---

[176] *Id.* (citing *Egan v. Hosp. Serv. Dist. No. One of Tangipahoa Par.*, No. 12-1352, 2013 WL 3270444, at *5 (E.D. La. June 26, 2013)).

[177] *Id.* at p. 10.

[178] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[179] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[180] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[181] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[182] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[183] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[184] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[185] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[186] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[187]

## B.   McDonnell Douglas *Burden-Shifting Framework*

"Because Louisiana's prohibition against age discrimination is identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally looked to federal case law for guidance."[188] The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*

---

[183] *Celotex*, 477 U.S. at 323.

[184] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

[185] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[186] *Little*, 37 F.3d at 1075.

[187] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[188] *LaBove v. Raftery*, 00-C-1394, 00-C-1423 (La. 11/28/01); 802 So. 2d 566, 573.

governs claims alleging discrimination under Louisiana's Age Discrimination in Employment Act.[189]

To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.[190] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[191] If the plaintiff can establish a prima facie case, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory purpose for an adverse employment action.[192] The defendant must point to admissible evidence in the record,[193] but the burden is one of production, not persuasion.[194] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[195] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[196]

    If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for

---

[189] *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir. 1990); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

[190] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[191] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

[192] *Id.*

[193] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[194] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[195] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[196] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

discrimination.[197] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[198]

### C.    Analysis

A prima facie case of employment discrimination based on age requires a showing that: (1) the plaintiff is between forty and seventy years of age; (2) the plaintiff was qualified for the job at issue; (3) the plaintiff was discharged; and (4) the plaintiff was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.[199] Kestler asserts that he has demonstrated a prima facie case of unlawful discrimination because: (1) at the age of 53, he was within the protected class; (2) he was qualified for the position; (3) he was discharged; and (4) he was replaced by someone outside of the protected class, who was 39 years old when he replaced Kestler.[200] In support, Kestler submits his own declaration in which he states that he is currently 55 years old, his separation notice dated February 25, 2014, as well as Motiva's responses to interrogatories, in which Motiva asserts that the individual hired to fill the position that Kestler held prior to his termination is Victor L. Adams, who was born in 1974.[201] Kestler has also submitted excerpts of deposition testimony from Perry Montz, Kestler's supervisor, who testified that Kestler was "very respected by the crafts [sic], and he knows his craft, so he was looked at by the craftsmen as a mentor."[202] When Montz was asked, "Also, you indicated he is highly respected because of his knowledge and work ethics," Montz responded, "Yea, so I just

---

[197] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[198] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[199] *LaBove*, 802 So. 2d at 573; *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

[200] Rec. Doc. 32 at p. 11.

[201] *Id.* (citing Rec. Doc. 32-2 at p. 1; Rec. Doc. 32-8 at p. 1; Rec. Doc. 32-11 at p. 6).

[202] Rec. Doc. 32-6 at p. 3.

explained that."[203] Wayne Fernandez, another employee of Motiva, testified that he had discussions with Montz about bringing in Kestler to a position as Maintenance Planner for the machine shop, stating "Perry [Montz] and I knew the best thing for the machine shop moving forward would be to have George [Kestler] in my previous position. He was – there was no learning curve for him. He was as good or over and above what I was doing . . . ."[204] However, Motiva does not contest that Kestler was qualified for his position.

Motiva asserts that Kestler cannot establish a prima facie case of age discrimination because he was replaced by an individual in the protected age group and he has no evidence that similarly situated individuals outside the protected age group were treated differently.[205] Kestler presents evidence that he was terminated in 2014 and the employee who replaced him was born in 1974.[206] Therefore, depending on the month in which Adams was born, he may have been either thirty-nine years old and outside the protected age group, or forty years old and within the protected age group. Although Motiva does not provide any evidence of the exact date of birth of its employee Adams, it appears that Motiva's argument is that if Adams is forty years old, Kestler cannot establish a prima facie case of age discrimination.

In *Bienkowski v. American Airlines*, the Fifth Circuit found that a plaintiff can establish a prima facie case of age discrimination where the plaintiff is replaced by a younger worker, even if the younger worker is also within the protected class.[207] However, in *Bienkowski* the court also found

---

[203] *Id.*

[204] Rec. Doc. 32-5 at p. 5.

[205] Rec. Doc. 17-1 at pp. 9–10.

[206] Rec. Doc. 32-11 at p. 6.

[207] *Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1506 (5th Cir. 1988).

that such a showing is not necessarily sufficient to prove a prima facie case, and the general requirement is that a plaintiff must show that he was replaced by a worker "sufficiently younger in the context of his employment to permit an inference of age discrimination."[208] The Fifth Circuit in *Bienkowski* found that the five year age difference between the plaintiff and the new employee, along with the fact that the replacement worker was the same age, fifty-four, as the average worker in the plaintiff's position, created a close question of whether the plaintiff had established a prima facie case.[209] Kestler has presented evidence that Adams was born in 1974 and Motiva has submitted no evidence to show that Adams was forty years old rather than thirty-nine years old at the time that he was hired. Moreover, even if Adams was forty years old, the age difference between Kestler and Adams is thirteen years, and is therefore much greater than the five-year age difference between the plaintiff and the new employee in *Bienkowski*, thereby distinguishing this case from *Bienkowski*.

In this case, the first three prongs of a prima facie case of age discrimination are undisputed: Kestler was within the protected class, he was qualified for his position, and he was discharged from that position. Kestler has also satisfied the final prong requiring a plaintiff to show that he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age because he was replaced by someone sufficiently younger.[210] Accordingly, Kestler has stated a prima facie case for age discrimination and therefore the Court next turns to whether Motiva has articulated a legitimate, nondiscriminatory purpose for an adverse employment action.[211]

---

[208] *Id.*

[209] *Id.*

[210] *LaBove*, 802 So. 2d at 573; *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

[211] *Nichols*, 81 F.3d at 41.

Motiva has asserted that it terminated Kestler's employment because it found that he falsified his time records and committed payroll fraud.[212] Motiva contends that it is well-established that falsifying time records constitutes a legitimate, non-discriminatory reason for discharging an employee.[213] In support, Motiva cites a case from another section of the Eastern District of Louisiana, *Huda v. Lockheed Martin*, where the court stated that "district courts in the Fifth Circuit have specifically found that falsification of time sheets constitutes a legitimate non-discriminatory grounds for discharges."[214] Motiva has presented the investigation summary of Lisa Nix, the Human Resources Account Manager who investigated Kestler's time records, in which Nix concluded:

> After reviewing the data, George Kestler did falsify time entry and commit payroll fraud by coding hour[s] of overtime that he did not work. There are five confirmed instances on the following dates: 1/28/13, 1/29/13, 7/24/13, 11/19/13, and 12/25/13 . . . . In addition to the confirmed instances George was unable to provide an explanation for coding on average 0.72 hours per day of overtime outside of the hours he was working on site. George's role as a Maintenance Planner generally does not involve work outside of the site after hours.[215]

In addition, Motiva has submitted the deposition testimony of Nix, where she testified that Kestler was terminated due to payroll fraud.[216] Therefore, because Motiva has presented a legitimate, nondiscriminatory purpose for Kestler's termination, the burden shifts back to Kestler to show that the non-discriminatory purpose for termination offered by Motiva is merely a pretext for discrimination.[217]

---

[212] Rec. Doc. 17-1 at p. 10; Rec. Doc. 32-12 at pp. 3–4.

[213] Rec. Doc. 17-1 at p. 10.

[214] *Id.* (citing No. 07-9090, 2009 WL 1211026 (E.D. La. May 1, 2009) (Barbier, J.)).

[215] Rec. Doc. 17-5 at pp. 4–5.

[216] Rec. Doc. 17-4 at p. 6.

[217] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

To establish pretext, the plaintiff must either show disparate treatment or show that the proffered explanation is false or unworthy of credence.[218] To succeed at this third stage, a plaintiff "must do more than just dispute the underlying facts and argue that [the employer] made the wrong decision . . . ."[219] Kestler asserts that he has presented sufficient evidence to show that Motiva's alleged non-discriminatory reason is a pretext for age discrimination.[220] In support, Kestler contends that the managers at the Norco Refinery were never told to stop having Kestler fill in for them and Kestler was never told not to fill in for the other managers.[221] Kestler also asserts in his declaration that he often did work from home when employees called him from the facility after he had left.[222] Furthermore, Kestler asserts in his declaration that he was informed by Partipilo, the overseer of payroll for employees at the Norco Refinery, that he was eligible for full retirement pension in less than two years and therefore "Partipilo knew or should have know[n] of my age and years of experience in the company prior to his questioning [the] overtime hours."[223]

In opposition, Motiva asserts that: (1) it has presented evidence that it did not rush to judgment in deciding to terminate Kestler; (2) Kestler admitted that he charged the company for eight hours of work on Christmas Day in 2013 despite the fact that he did not actually work that day and merely carried the "duty phone;" (3) Kestler routinely charged every minute of his lunch period

---

[218] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010).

[219] *LaMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

[220] Rec. Doc. 32 at p. 12.

[221] Rec. Doc. 32-2 at p. 4.

[222] *Id.* at p. 5.

[223] *Id.* at p. 6.

as work time and; (4) on average, Kestler billed the company for three quarters of an hour per day in excess of his first clock into the refinery and his last clock out.[224]

At the core of Kestler's opposition to the motion for summary judgment is an attempt to prove that his employer made the wrong decision in firing him. Kestler submits that other employees knew him to be a valuable employee, that the overtime hours he reported were hours he actually worked because employees called him after he had left the facility, and that the central dispute in the allegations of falsifying time records is over 45 minutes in overtime per day.[225] Furthermore, Kestler contends that he was never counseled against filling in for other managers and that his supervisor failed to monitor his overtime appropriately.[226] Kestler does not dispute that he charged the company for time after he had left the refinery.[227] Rather, Kestler asserts that he believed that the hours he submitted were properly counted as work hours.[228] However, even if Kestler's arguments are accurate, "a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith."[229] Motiva has submitted evidence that it engaged in a month-long investigation, gave Kestler multiple opportunities to explain the records he had submitted, looked at the gate logs, and spoke to other Motiva employees about Kestler's overtime.[230] In opposition to the motion for summary judgment, Kestler has submitted emails between himself and Nix in which Kestler explained to Nix why he

---

[224] Rec. Doc. 17-1 at p. 11.

[225] Rec. Doc. 32 at pp. 12–13.

[226] *Id.* at p. 14.

[227] Rec. Doc. 32-2 at p. 9.

[228] *Id.* at p. 4.

[229] *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 10 (5th Cir. 2009) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)).

[230] Rec. Doc. 17-5.

charged his time the way he did and asserted that he had not received any formal training regarding how to charge his time.[231] Although Kestler asserts in his declaration that "[Motiva] attempted to terminate [him] for several issues before subsequently and ultimately agreeing on the pay discrepancy," the issues he asserts they tried to fire him over were "taking duty [phone] for Maintenance Supervisor on Christmas day" and a training in Houston.[232]  These issues were accounted for in Nix's investigation summary.[233] Therefore, the Court finds that Kestler has not submitted any evidence to rebut Motiva's evidence of a good faith belief that Kestler had falsified his time.

Kestler also asserts that Partipilo had informed him that he was eligible for full pension retirement in less than two years.[234] The Fifth Circuit has found that although "musings about eventual retirement [] do not evidence discriminatory intent," "persistent supervisor comments about retirement can compound other evidence that a proffered nondiscriminatory reason for terminating an employee was pretextual."[235] The Fifth Circuit has articulated a two-part test for evaluating remarks offered as circumstantial evidence alongside other alleged discriminatory conduct: "(1) discriminatory animus (2) on the part of the person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker."[236] Kestler has presented no evidence that Partipilo was responsible for the employment

---

[231] Rec. Doc. 32-8 at p. 4.

[232] Rec. Doc. 32-2 at p. 7.

[233] Rec. Doc. 17-5 at pp. 4–5.

[234] Rec. Doc. 32-2 at p. 6.

[235] *Ng-A-Mann v. Sears, Roebuck & Co.*, No. 15-20083, 2015 WL 7348968 (5th Cir. 2015) (quoting *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993)).

[236] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

decision or that he had any influence over any decisionmaker. Furthermore, Motiva has presented the declaration of Partipilo in which he states that he has never spoken with Kestler or written Kestler a letter, nor was he involved in the decision to terminate Kestler's employment.[237]

The Fifth Circuit, in *Kilgore v. Brookeland*, held that, where a bus driver was terminated by his employer and the employer mentioned at the time of termination that the plaintiff was eligible for retirement, a comment concerning retirement eligibility, by itself, was an insufficient basis for a jury to conclude that the plaintiff's age more likely motivated the decision to terminate the plaintiff than the proffered reasons of job performance and budget cuts.[238] Furthermore, in *Cervantez v. KMGP Services Co. Inc.*, the Fifth Circuit stated that a comment is not evidence of discrimination if it is the sole proof of pretext or if it is not made in temporal proximity to the adverse employment decision.[239] In this case, Kestler does assert that Partipilo made any comment regarding retirement in temporal proximity to the investigation, stating only that he was informed by Human Resources "several times in the last few years of my employment about my retirement possibilities."[240] Although Kestler asserts that Partipilo had access to Kestler's age and that it only mattered to Motiva "that he was getting paid too much because he was there too long and he was too old," an employee's testimony "regarding his subjective belief that his termination resulted from age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his release."[241]

---

[237] Rec. Doc. 36-1 at p. 28.

[238] 538 F. App'x 473, 474–75, 477 (5th Cir. 2013).

[239] 349 F. App'x 4, 11 (5th Cir. 2009) (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003); *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007).

[240] Rec. Doc. 32-3 at p. 5 ("Q. Did your age ever come up in any discussions that you had with either Lisa Nix or Perry Montz? A. No."); Rec. Doc. 32-2 at p. 6.

[241] *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115 (5th Cir. 1993).

In addition, along with his amended supplemental memorandum, Kestler submits a document that Kestler asserts is a worksheet calculating the amount of Kestler's overtime work in January 2013.[242] At the top of the document is a handwritten note that states "George Kestler – retirement eligible*."[243] Motiva objects to the Court's consideration of this document on the grounds that: (1) it is beyond the scope of the Court's briefing Order; (2) the document was not listed in Kestler's exhibit list or Kestler's list of exhibits in the proposed Pre-Trial Order; and (3) he has no evidence to support the arguments that he is making about this exhibit.[244] The Court requested additional briefing on the narrow issue of whether Motiva's alleged failure to follows its progressive disciplinary policy raises a genuine issue of material fact that the stated reason for Kestler's termination is merely a pretext for discrimination.[245] The Court did not request additional briefing on any other issue, nor does Kestler explain why it failed to submit this document in connection with its original opposition to the motion for summary judgment. Furthermore, Kestler submitted no evidence providing any authentication or context for this document, including who wrote the handwritten note on the document or when the note was written. However, even if the Court were to consider this document, the document does not raise an inference of pretext. As previously stated, "musings about eventual retirement simply do not evidence discriminatory intent,"[246] nor does Kestler provide any evidence to show that the note was written by "an individual either primarily

---

[242] Rec. Doc. 50-1 at p. 3.

[243] *Id.*

[244] Rec. Doc. 47 at p. 3.

[245] Rec. Doc. 41 at p. 1.

[246] *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993).

responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker."[247]

Kestler also points to a chart that he allegedly created representing employees in the Maintenance Department as evidence of age discrimination within Motiva.[248] Motiva lodges several objections to the Court's consideration of this document on the grounds of hearsay, the fact that it was never produced in discovery or included on Kestler's exhibit list, that it is "fundamentally inconsistent" with Kestler's deposition testimony, and relevance.[249] In the chart, Kestler asserts that in Maintenance Manager Verdell Banner's ("Banner") department, Clint Gagliano, who is in his 30s, replaced an individual in the position of Maintenance Supervisor who was around 58 years old.[250] Kestler asserts that Banner participated in the decision to fire Kestler.[251] Kestler also asserts that Motiva hired all young Heavy Equipment Operators and an applicant in his fifties did not get the job.[252] The chart also shows that Mechanical Inspector jobs went to younger applicants over older applicants.[253] However, the chart, created by Kestler as a demonstrative of his argument in opposition to the motion for summary judgment, is not evidence. Pursuant to Federal Rule of Evidence 1006, a "proponent may use a summary, chart, or calculation to prove the content of

---

[247] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). Motiva argues that the Court should deem all of the facts listed in its Statement of Undisputed Facts as admitted because Kestler does not provide any specific reference to record evidence in opposition. Rec. Doc. 36 at pp. 3–4. Motiva also asserts that the Court should disregard portions of Kestler's declaration on several grounds. *Id.* at pp. 4–8. The Court need not address these objections as the Court finds that even considering these documents, Kestler has failed to create a genuine issue of material fact that the stated grounds for termination are false or unworthy of credence.

[248] Rec. Doc. 32 at p. 11 (citing Rec. Doc. 32-2 at p. 11).

[249] Rec. Doc. 36 at pp. 11–13.

[250] Rec. Doc. 32-2 at p. 11.

[251] *Id.* (citing Rec. Doc. 32-12 at pp. 3–5).

[252] *Id.* (citing Rec. Doc. 32-6 at p. 5).

[253] Rec. Doc. 32-2 at p. 11.

voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." The chart Kestler has submitted in opposition to summary judgment does not appear to meet any of the requirements of Federal Rule of Evidence 1006 to be considered proper summary evidence. Moreover, this chart does not even appear to represent any records. Furthermore, Motiva contends that this document was never produced in discovery and was not included on Kestler's exhibit list.[254]

A plaintiff can show that the proffered reason for his termination was pretextual by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[255] In his opposition, Kestler does not argue that evidence of disparate treatment demonstrates that the proffered reason for his termination was pretextual. Rather, Kestler argues only that the proffered reason was false.[256] However, even if the Court were to construe Kestler's citation of this chart as Kestler proffering evidence of disparate treatment, the Fifth Circuit has held that in disparate treatment cases, the plaintiff must show "nearly identical" circumstances for employees to be considered similarly situated.[257] In *Ng-A-Mann v. Sears, Roebuck & Co.*, a 72-year-old salesman brought an age discrimination claim against his employer after he was terminated for violating the company's coupon policy.[258] In arguing that the employer's explanation for his termination was a pretext for discrimination, the plaintiff argued that multiple members observed

---

[254] Rec. Doc. 36 at p. 10.

[255] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010).

[256] Rec. Doc. 32 at pp. 12–14.

[257] *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007).

[258] No. 15-20083, 2015 WL 7348968 (5th Cir. 2015).

his use of coupons without complaint, and the plaintiff identified other employees who also used coupons as he did but were not punished.[259] The Fifth Circuit held that the plaintiff failed to create a genuine dispute regarding disparate treatment, stating:

> [Plaintiff's] declaration notes that certain employees who violated the coupon policy were "commissioned salespeople like [him]," but says nothing about the severity or frequency of their violations aside from alleging that such coupon misuse was "common practice." He does not identify any employee flagged by the audit for violations of store policy but was not disciplined, and he offers no evidence that the audit was motivated by discriminatory animus. [Plaintiff] fails to identify with sufficient specificity a similarly situated employee who violated the coupon policy with comparable frequency and was not fired.[260]

Likewise, in *Vann v. Mattress Firm, Inc.*, the Fifth Circuit affirmed the district court's grant of summary judgment in a case where an employee brought suit against her employer alleging age, sex, and race based discrimination after she was terminated when a customer complained that she had altered the customer's bill.[261] In *Vann*, the employee argued that her termination was pretextual because similarly situated employees who were not members of the relevant protected classes were treated favorably in comparison with her.[262] The Fifth Circuit found that the employee had "not offered any comparators with a similar history of poor teamwork and facility management who were preferentially treated."[263] The court stated that "[Plaintiff] has offered evidence of other employees, not members of protected classes, who sold used goods as new, were late or absent from work, engaged in unprofessional conduct towards customers or coworkers, and shared information with competitors" who were not terminated; however, their activities were insufficiently close to the

---

[259] *Id.* at *2.

[260] *Ng-A-Mann,* 2015 WL 7348968 at *3.

[261] No. 15-20082, 2015 WL 5675039, at *2 (5th Cir. 2015).

[262] *Id.* at *3.

[263] *Id.*

plaintiff's to create a genuine issue of material fact as to whether her employer's justifications are pretext.[264]

Kestler makes no argument regarding any similarity between himself and the individuals he lists in the chart. Looking at the chart, it is clear that these individuals do not hold the same position as Kestler did when he was terminated. Kestler was a Maintenance Planner, whereas the individuals listed on the chart were hired as Mechanical Inspectors, Heavy Equipment Operators, and a Maintenance Supervisor.[265] Nor has Kestler alleged that any of these individuals were also accused of falsifying time records or committing payroll fraud. Therefore, the Court concludes that, even assuming that the chart is admissible, Kestler has failed to raise a genuine issue of material fact that Motiva's stated reason for his termination was pretext for age discrimination.[266]

Finally, citing the deposition testimony of Perry Montz, Kestler asserts that Motiva has a progressive discipline policy that has been used in the past and contends that it was not used in Kestler's case.[267] Kestler also submitted the deposition testimony of Wayne Fernandez ("Fernandez"), another employee of Motiva, who also testified that Motiva has a progressive discipline policy, and that, as a supervisor, he would issue a warning before imposing any discipline.[268] Kestler asserts that this failure to follow the progressive discipline policy raises a genuine issue of material fact that the stated reason for Kestler's termination is merely a pretext for discrimination.[269] In opposition, Motiva asserts that it did not deviate from its policies when it

---

[264] *Id.* at *4.

[265] Rec. Doc. 32-2 at p. 11.

[266] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[267] Rec. Doc. 42 at pp. 1–2 (citing Rec. Doc. 32-6 at p. 4).

[268] Rec. Doc. 32-5 at pp. 7–8.

[269] Rec. Doc. 42 at p. 1.

terminated Kestler because the company always reserves the right to skip steps in the progressive

discipline policy, and the decision was made in this case because Kestler's conduct was sufficiently

egregious to warrant termination.[270] Motiva also contends that an employer's failure to follow a

progressive discipline policy is only probative of discriminatory intent when the plaintiff has proof

that the policy was applied differently to others outside the protected class and here, there is no

evidence to suggest that Motiva treated younger employees who falsified their time records any

differently than it treated Kestler.[271]

The Fifth Circuit has found that when an employer opts to have a disciplinary system, failure

to follow that system may give rise to inferences of pretext.[272] Motiva contends that Kestler also

must show that the policy was applied differently to others outside the protected class; however, the

Fifth Circuit cases Motiva cites in support are cases concerning discrimination under Title VII, not

the ADEA. The only case discussing progressive discipline policies involving an age discrimination

claim cited by Motiva is *Hedgemon v. Madison Parish School Board*, which is an unpublished

Western District of Louisiana case.[273] The Fifth Circuit, in a case decided in 2015, *Goudeau v.*

*National Oilwell Varco*, in discussing pretext in an ADEA claim, stated that "when an employer opts

to have a disciplinary system that involves warnings, failure to follow that system may give rise to

inferences of pretext."[274] The court made no mention of a requirement that the plaintiff also submit

evidence that he was treated differently from others outside of his protected group. Nor did the Fifth

---

[270] Rec. Doc. 44 at p. 3.

[271] *Id.* at pp. 4–5 (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007)).

[272] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015).

[273] No. 14-0817, 2015 WL 4094701 (W.D. La. July 7, 2015).

[274] 793 F.3d 470, 477 (5th Cir. 2015).

Circuit articulate any such requirement in *Machinchick v. PB Power, Inc.*, after stating that the non-mandatory nature of a progressive discipline policy and the fact that the plaintiff was an at-will employee "d[id] not eliminate the inference of pretext raised by [the] failure to follow an internal company policy specifically stating that it should be 'followed in most circumstances.'"[275] Therefore, the Court is not persuaded that Kestler must also provide evidence that Motiva applied its progressive discipline policy differently to younger employees who falsified their time records.[276] Accordingly, the Court now turns to whether Kestler has raised a genuine issue of material fact that Motiva's alleged failure to follow its progressive discipline policy demonstrates that the stated reason for Kestler's termination is pretextual.

In evaluating whether a failure to follow a progressive discipline policy gives rise to an inference of pretext under the *McDonnell Douglas* framework, courts consider whether there were guidelines regarding when the policy should be used, whether there were exceptions to the policy, and whether the policy was not just a policy on paper but whether the policy was actually used.[277] Kestler submits the testimony of Montz, who asserts that the progressive discipline policy at Motiva involves coaching and counseling as well as formal discipline which includes "an oral reminder, a written reminder, a DML – which is decision-making leave – and termination."[278] Kestler also submits deposition testimony that Montz and Fernandez have used this policy in the past, as well

---

[275] 398 F.3d 345, 354 n.29 (5th Cir. 2005).

[276] Kestler also asserts that Motiva is estopped from claiming that Kestler has no evidence of younger employees who the company claims falsified time records and were given warnings instead of termination. Rec. Doc. 50 at p. 5. However, considering the Court's analysis above, the Court need not address this argument.

[277] *See, e.g., Keller v. Coastal Bend College*, No. 15-40710, 2015 WL 6445751 (5th Cir. 2015); *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 367 (5th Cir. 2009); *Bugos v. Ricoh Corp.*, No. 07-20757, 2008 WL 3876548, at *5 (5th Cir. 2008); *Machinchick*, 398 F.3d at 354 n.29.

[278] Rec. Doc. 32-6 at p. 4.

as evidence that disciplinary action was taken in the past against Kestler using this policy.[279] However, although Montz and Fernandez state that there is a progressive discipline policy, they also both acknowledge that there are exceptions to the policy.[280] Montz specifically states that certain circumstances, like stealing or using a racial slur, would merit automatic termination.[281]

Motiva submits the deposition testimony of Nix, who testified that the company always reserves the right to skip steps in the progressive discipline policy and in Kestler's case, the decision was made that his conduct was egregious enough to warrant termination.[282] Motiva also presents evidence that another employee, David Landeche, who was within the protected class, was also terminated for submitting false time records and asserts that he was also terminated without progressive discipline.[283]

It is Kestler's burden  to show that the non-discriminatory purpose for termination offered by Motiva is merely a pretext for discrimination.[284] Kestler has not pointed to any case where a court has found that the plaintiff had raised an inference of pretext in circumstances similar to the circumstances here. This case is unlike *Machinchick* because there has been no evidence presented that the progressive discipline policy was mandatory, or even that it was supposed to be "followed in most circumstances." Every witness who testified about the policy noted that there were exceptions to the policy for egregious cases and Nix testified that a decision was made that Kestler's

---

[279] *Id.*; Rec. Doc. 32-5 at pp. 7–8;  Rec. Doc. 44.

[280] Rec. Doc. 32-5 at p. 8; Rec. Doc. 32-6 at p. 4.

[281] Rec. Doc. 32-6 at p. 4.

[282] Rec. Doc. 44-1 at p. 8.

[283] Rec. Doc. 44-3 at p. 6; Rec. Doc. 44-4.

[284] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

conduct in particular warranted termination.[285] Nor is this case analogous to *Goudeau*, where the court found that the plaintiff's employer had "manufactured steps in the disciplinary policy by issuing written warnings to paper his file after it had decided to fire him."[286]

Nix testified that a decision was made that Kestler's conduct was egregious enough to warrant termination.[287] It is not the place of this Court to second guess Motiva's evaluation of the egregiousness of Kestler's conduct. In *Moss v. BMC Software, Inc.*, the Fifth Circuit stated that "[t]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated."[288] Therefore, the Court finds that Kestler has presented no evidence that creates a genuine issue of material fact that the stated grounds for his termination, falsification of time records and payroll fraud, is merely a pretext for discrimination.

---

[285] Rec. Doc. 44-1 at p. 8.

[286] 793 F.3d 470, 477 (5th Cir. 2015).

[287] Rec. Doc. 44-1 at p. 8.

[288] 610 F.3d 917, 926 (5th Cir. 2010).

### IV. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Motiva's "Motion for Summary Judgment"[289] is

**GRANTED**.

**NEW ORLEANS, LOUISIANA**, this __4th__ day of March, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[289] Rec. Doc. 17.